UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-592-KDB
3:20-cr-189-KDB-DCK-1

| | |
|---|---|
| **BRIAN ELLIOTT KURSONIS,** | ) |
| Petitioner, | ) ) ) |
| vs. | ) ) **ORDER** |
| **UNITED STATES OF AMERICA,** | ) ) |
| Respondent. | ) ) ) |

**THIS MATTER** is before the Court on Petitioner's *pro se* 28 U.S.C. § 2255 Motion to Vacate Sentence, (Doc. No. 1).

### I. BACKGROUND

Petitioner was taken into custody on multiple state sexual offenses on April 23, 2018.[1] A Bill of Information was filed in the instant criminal case on June 10, 2020, charging Petitioner with a single count of enticing Minor Victim 1 ("MV1") to engage in sexually explicit conduct for the purpose of producing child pornography in violation of 18 U.S.C. §§ 2251(a), (e).[2] (3:20-cr-189 ("CR") Doc. No. 1).

---

[1] Petitioner was charged in Mecklenburg County Superior Court Case Nos. 18CRS213471, 18CRS213472, 18CRS213473, 18CRS213474, 18CRS213475, 18CRS213476, 18CRS213478, 18CRS213480, 18CRS213481, 18CRS213482, 18CRS213483, 18CRS213484, 18CRS213485, and 18CRS213477 with indecent liberties with child; in Case No. 18CRS010458 with attempted second degree sex offense by force; in Case Nos. 18CRS010459, 18CRS010460, 18CRS010461, and 18CRS0101462 with sex offense – parental role; in Case Nos. 18CRS010455 and 18CRS010456 with second degree forcible sex offense; and in Case No. 18CRS010457 with second degree forcible rape. This information was gleaned in part from the Mecklenburg County Sheriff's Office website, of which the Court takes judicial notice. https://mecksheriffweb.mecklenburgcountync.gov/Inmate/Details?pid=0000472428&jid=18-038447&activeOnly=False&lastName=kursonis&prisType=ALL&maxrows=48&page=1 (last accessed April 13, 2022); Fed. R. Ev. 201.

[2] The Petitioner waived indictment. (CR Doc. No. 9).

1

On June 17, 2020, the Government filed a Plea Agreement that had been signed by Petitioner and his attorney on June 9, 2020. (CR Doc. No. 3). In the Plea Agreement, Petitioner admitted that he is guilty as charged and acknowledged that his sentencing exposure was "a mandatory minimum of 15 years and not more than 30 years' imprisonment…." (Id. at ¶¶ 1, 4). The Plea Agreement states that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum and would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. (Id. at ¶ 6).

The parties agreed to jointly recommend the following findings and conclusions regarding the U.S. Sentencing Guidelines: the base offense level is 32 pursuant to U.S.S.G. § 2G2.1(a); a two-level enhancement applies pursuant to § 2G2.1(b)(1) because the offense involved a minor under the age of 16; a two-level enhancement applies pursuant to § 2G2.1(b)(1)(B) because the offense involved a minor who had attained the age of 12 but was younger than 16; a two-level enhancement applies pursuant to § 2G2.1(b)(2)(A) because the offense involved the commission of a sexual act or sexual contact; a two-level enhancement applies pursuant to § 2G2.1(b)(5) because the Petitioner was a parent, relative, or legal guardian of the minor involved in the offense, or the minor was otherwise in the custody, care, or supervisory control of the Petitioner; a five-level enhancement applies pursuant to § 4B1.5(b)(1) because Petitioner engaged in a pattern of sexual activity involving prohibited sexual conduct; that Minor Victim 2 ("MV2") should be cross-referenced as relevant conduct pursuant to § 2G2.1(d)(1); the plea is timely for purposes of acceptance of responsibility pursuant to § 3E1.1, if applicable; Petitioner's guidelines range will

be calculated pursuant to the career offender or armed career criminal guidelines, if applicable; and Petitioner will register as a sex offender. (Id. at ¶ 7). The parties remained free to argue their respective positions regarding any other specific offense characteristics, cross-references, and special instructions, reductions, enhancements, departures, and adjustments to the offense level; and to seek a departure or variance from the applicable guideline range. (Id.).

The Plea Agreement states that the Petitioner stipulated to the existence of a factual basis to support the guilty plea as set forth in the Factual Basis, which he read and understood, and which may be used by the Court, United States Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. (Id. at ¶ 10).

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right to: be tried by a jury; be assisted by an attorney at trial; confront and cross-examine witnesses; and not be compelled to incriminate himself. (Id. at ¶ 14). The Plea Agreement contains an express waiver of Petitioner's right to contest his conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. (Id. at ¶¶ 15-16). The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." (Id. at ¶ 22).

The Factual Basis, signed by Petitioner's counsel on June 9, 2020, and filed along with the Plea Agreement provides in relevant part:

> That on or about February 19, 2013 in Mecklenburg County, the Defendant employed, used, persuaded, induced, enticed or coerced the victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of such
3

conduct;

at the time the visual depiction was created the victim was a minor; and

the defendant created the visual depiction using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce.

(CR Doc. No. 4 at 1)(paragraph numbers omitted).

Petitioner's initial appearance and Rule 11 hearing came before Magistrate Judge David S. Cayer on July 20, 2020. See (CR Doc. No. 36). Petitioner agreed, under oath, that: he understood that giving false information under oath may result in his prosecution for perjury; his mind was clear; he was not under the influence of alcohol, medicines, or drugs of any kind; and that he understood he was there to enter a guilty plea that cannot later be withdrawn. (Id. at 4-5, 7). He acknowledged that he received a copy of the Information, discussed it with his lawyer. (Id. at 5-6). The charge was read aloud, along with the Plaintiff's sentencing exposure of not less than 15 years nor more than 30 years' imprisonment. (Id. at 4-6). Petitioner agreed that he fully understood the charge and the maximum penalty that could apply to him. (Id. at 5-6, 9). Petitioner confirmed that he had discussed with counsel: how the sentencing guidelines may apply to his case; that the Court would not be able to determine his sentence until a PSR has been prepared; he may receive a sentence that is different from that called for by the guidelines; and he will still be bound by the plea even if he receives a sentence more severe than he expects. (Id. at 6-7). Petitioner acknowledged the rights he was waiving by pleading guilty and stated his understanding that the case would proceed directly to sentencing. (Id. at 7-8). He admitted that he is guilty of the offense charged in the Information. (Id. at 8).

The prosecutor summarized the Plea Agreement in open court. (Id. at 9-12). Petitioner stated that he understood and agreed with the terms of the Plea Agreement, including the waiver

4

of his appellate and post-conviction rights. (Id. at 12). Petitioner stated that he had also read the Factual Basis, understood it, and agreed with it, and that nobody threatened, intimidated, forced him to plead guilty, or made any promises of leniency or a light sentence other than the terms of the Plea Agreement. (Id. at 12-13). Petitioner stated that he had enough time to discuss any possible defenses with his attorney, was satisfied with his lawyer's services, had heard and understood all parts of the proceeding, and still wished to plead guilty. (Id. at 13). Counsel confirmed that she had reviewed the terms of the Plea Agreement with Petitioner and was satisfied that Petitioner understood them. (Id. at 14).

The Presentence Investigation Report's ("PSR") reflects that the Petitioner accepted responsibility in the following written statement: "I admit that I did persuade and coerce Minor Victim 1 to engage in sexually explicit conduct for purposes of producing a visual depiction of that conduct. I saved those images electronically." (CR Doc. No. 20 at ¶ 29). The PSR scored the base offense level for MV1 as 32 pursuant to § 2G2.1 because the offense is a violation of 18 U.S.C. § 2251(a). (Id. at ¶ 33). Two levels were added: due to the victim's age pursuant to § 2G2.1(b)(1)(B); because the offense involved a minor between the ages of 12 and 16 pursuant to § 2G2.1(b)(1)(B); and because Petitioner was a parent, relative, or legal guardian of the minor, or the minor was otherwise in his care, custody, or supervisory control. (Id. at ¶¶ 34-36). This resulted in an adjusted offense subtotal of 38 for minor victim 1. (Id. at 40). The base offense level for MV2 was also calculated as 32 pursuant to § 2G2.1, and two levels were added pursuant to §§ 2G2.1(b)(1)(B) and 2G2.1(b)(5), resulting in an adjusted offense level subtotal for MV2 of 36. (Id. at 41-43, 47). The combined adjusted offense level was 40, based on the greater adjusted offense level of 38, and adding two levels pursuant to § 3D1.4. (Id. at 48-50). Five levels were added pursuant to § 4B1.5(b)(1), because Petitioner was a repeated and dangerous sex offender against

minors. (Id. at ¶ 51). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 42. (Id. at ¶¶ 52-54). Petitioner had zero criminal history points and a criminal history category of I. (Id. at ¶¶ 60-61). The resulting advisory guidelines range was life imprisonment, however the statutory maximum for the offense is 30 years' imprisonment, so the guideline term of imprisonment was 360 months.[3] (Id. at 89).

The section of the PSR addressing Personal and Family Data notes that Petitioner reported early-onset Alzheimer's disease with which he was diagnosed at age 55,[4] and causes him difficulty with daily living such as organization, routine activities and short-term memory, difficulty with balance, and difficulty remembering details about his history. (Id. at ¶ 72). The PSR section addressing Physical Condition provides that Petitioner reported that he was diagnosed with Alzheimer's in 2015, for which he received treatment at the Alzheimer's Memory Clinic in Charlotte, and at Wake Forest Medical Center, but that he had not received medication or treatment since his arrest. (Id. at ¶ 73). He reported that he suffers from balance problems, ear pain related to noise, as well as memory lapse, and his caregiver reports that he requires a way to set up reminders for himself, such as a notepad and writing utensil. (Id.). Records from Carolinas HealthCare System Rehabilitation Neuropsychological Evaluation indicate that Petitioner was diagnosed with "Minor Neurocognitive Disorder (Mild Cognitive Impairment) and Possible Cerebral Degeneration on October 20, 2015." (Id. at ¶ 76). Records from Novant Health Blakeney Family Physicians "verify the defendant was diagnosed with early-onset Alzheimer's dementia without behavioral disturbance, ICD 10 code G30.0 and F02.80 in May 2016." (Id. at ¶ 77).

---

[3] The PSR notes that, without the agreed cross-reference to MV2, the total offense level would have been 40 and the guidelines imprisonment range would have been 292 to 360 months' imprisonment. (Id. at ¶ 90).

[4] Petitioner was 59 at the time the PSR was completed.

6

Counsel for Petitioner filed a Sentencing Memorandum requesting a departure below the guideline range of 180 months' imprisonment pursuant to U.S.S.G. §§ 5H1.1 and 5H1.4 and 18 U.S.C. § 3553(a) due to, *inter alia,* Petitioner's age and Alzheimer's diagnosis. (CR Doc. No. 23).

A sentencing hearing came before the Court on October 29, 2020. (CR Doc. No. 30). Petitioner stated that he read and understood the PSR and had all the time he wanted to discuss it with his lawyer. (Id. at 3). Defense counsel argued that the Court should depart downward from the guideline range because his doctors noted cerebral degeneration as early as 2015, he was diagnosed with early-onset Alzheimer's in 2016, and he has been suffering noticeable symptoms for at least five years, which "overlaps perfectly" with the charged conduct and was a contributing factor in that conduct. (Id. at 6-9). Counsel also argued that Petitioner accepted responsibility because "[h]e did not want to put these young women through that," he has a "very short life expectancy" in prison, and there is a low possibility of rehabilitation or recidivism because of his health conditions. (Id. at 9-12). Petitioner addressed the Court and expressed his remorse, shame, and regret. (Id. at 14).

The Government argued that a guideline sentence should be imposed in light of the seriousness of the offense, to provide adequate deterrence, to provide just punishment, and because Petitioner had tried to minimize his conduct, and because Petitioner received a substantial benefit from the Plea Agreement. (Id. at 16, 18-24). Specifically, Petitioner was allowed to plead to a single count of production of child pornography with a cross-reference to a second victim, rather than being charged with a second production count, and with a charge of possession of child pornography, which would have raised his maximum sentencing exposure to life imprisonment. (Id. at 16-17). The prosecutor argued that a downward departure was not warranted by Petitioner's Alzheimer diagnosis because: no evidence had been presented to support a connection between

his diagnosis and conduct; the conduct began in 2008 or 2009 well before he was diagnosed with any cognitive disorder; and the offenses involved deliberation that was inconsistent with a cognitive disorder. (Id. at 20-23).

The Court denied Petitioner's request for a departure or variance because such was not justified based on Petitioner's age or Alzheimer's diagnosis. (Id. at 24-25). Although the Alzheimer's was "worthy of consideration, it does not overrule all of the other considerations the Court must bring in…" including the seriousness of his long-term conduct. (Id. at 25-6). The Court considered all the relevant factors and determined that a sentence at the top of the guidelines of 360 months' imprisonment was appropriate. (Id. at 27-28). At the close of the sentencing hearing, the Court informed Petitioner of his appellate rights as follows:

> BY THE COURT: Mr. Kursonis, you can appeal your conviction if you believe your guilty plea was somehow unlawful or involuntary or if there's some other fundamental defect in these proceedings…. [Y]ou also have a right to appeal your sentence under certain circumstances, particularly if you believe it's contrary to the law.
>     Any notice of appeal must be filed within 14 days from the entry of the Court's judgment. If you are unable to afford the cost of an appeal, if you ask, the Clerk of Court will prepare and file a notice of appeal on your behalf at no cost to you. I suggest you discuss these rights with your attorney, but do you understand them as I've explained them to you?
>
> THE DEFENDANT: Yes.

(Id. at 30-31).

The Judgment was entered on October 30, 2020, sentencing Petitioner to 360 months' imprisonment followed by a life term of supervised release, and requiring him to register as a sex offender. (CR Doc. No. 26). Petitioner did not appeal.

Petitioner filed the instant § 2255 Motion to Vacate on October 29, 2021.[5] (Doc. No. 1). He argues that counsel was ineffective for:[6] (1) failing to investigate his competence to plead guilty; (3) providing misadvice that rendered the guilty plea involuntary; and (3) failing to file a notice of appeal on his behalf. Petitioner asks the Court to appoint counsel, order the Government to respond, allow Petitioner to reply, require the Government to provide him with a complete file of the criminal proceedings, grant him the opportunity to engage in discovery, allow him to amend, and grant any other relief that the Court deems just and proper. (Doc. No. 1 at 7).

The Government filed a Response arguing that the Motion to Vacate should be denied because Petitioner has not shown deficient performance by counsel or prejudice. (Doc. No. 5). Petitioner was granted the opportunity to reply and, despite receiving an extension of time, has failed to do so. (Doc. No. 6). This matter is ripe for disposition.

## II.  SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior

---

[5] The Court relies on the post-mark date because Petitioner failed to certify the date upon which he placed the Motion to Vacate in the prison mail system. See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

[6] Petitioner's claims have been liberally construed, restated, and renumbered. Any argument or subclaim not specifically addressed in this Order has been considered and rejected.

proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that, in all criminal prosecutions, the accused has the right to the assistance of counsel for her defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced her. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670. Petitioner's claims of ineffective assistance of counsel will be addressed in turn.

1. **Competence**

First, the Petitioner appears to argue that he might not have been competent to plead guilty, and that counsel was ineffective for failing to adequately investigate and present the issue to the Court. Specifically, he argues that counsel failed to "request an psychological evaluation to determine whether [Petitioner] was both competent to stand trial and criminally responsible" despite being "aware of [Petitioner's] previous evaluations concerning his brain disorder." (Doc. No. 1 at 3). Petitioner argues that counsel should have placed his prior evaluations, Alzheimer's diagnosis, and other evidence in the record, and requested a competency evaluation because his Alzheimer's diagnosis "factored in having an adverse affect [sic] on his ability to understand the proceedings." (Id. at 4-5).

"A criminal defendant may not be tried unless he is competent." Godinez v. Moran, 509 U.S. 389, 396 (1993) (citing Pate v. Robinson, 383 U.S. 375, 378 (1966). A defendant is competent when "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and [when] he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960). "Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." Burket v. Angelone, 208 F.3d 172, 192 (4th Cir. 2000) (citation omitted). Further, "neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." Id. A district court must grant a motion for a hearing to determine a defendant's mental competency, or order such a hearing on its own motion, "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a); see 18

11

U.S.C. § 4241(b) (a court may order psychiatric or psychological examination of the defendant prior to the date of the hearing). Whether "reasonable cause" exists is a question left to the sound discretion of the district court. United States v. Bernard, 708 F.3d 583, 592-93 (4th Cir. 2013) (reasonable cause may be established through "evidence of irrational behavior, the defendant's demeanor at trial, and medical opinions concerning the defendant's competence.") (internal quotation marks omitted). To demonstrate prejudice for counsel's failure to investigate a claim of incompetence, a petitioner must prove only that the court would have held a competency hearing had counsel raised the issue. Becton v. Barnett, 920 F.2d 1190, 1193-94 (4th Cir. 1990).

Although the Petitioner suggests that he might not have been competent to plead guilty, he has not identified any "red flags" that would have required the Court or counsel to inquire further into his competence. See United States v. Nicholson, 676 F.3d 376 (4th Cir. 2012) (a trial court need only inquire into a criminal defendant's competence when a response in a plea colloquy raises a red flag as to his competence to plead guilty). The record reveals that Petitioner had been diagnosed with mild cognitive impairment in 2015 and early-onset Alzheimer's in 2016. However, he behaved appropriately at the Rule 11 and sentencing hearings; responded appropriately to all of the Court's questions; stated in open Court that he fully understood the Plea Agreement, Factual Basis, and PSR; and engaged in meaningful consultation with counsel. See (CR Doc. No. 36 at 6-8, 13); (CR Doc. No. 30 at 3). Counsel confirmed that she had reviewed all features of the case and the Plea Agreement with Petitioner and was satisfied that Petitioner understood them and knew what he was doing. (Id. at 14). Petitioner's present self-serving suggestions that he may have been incompetent to enter a knowing and voluntary guilty plea, and that counsel should have introduced his prior evaluations into the record, are speculative, unsupported, and controverted by the record including his own sworn statements at the Rule 11 hearing. See Blackledge v. Allison, 431 U.S.

12

63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary). Moreover, Petitioner has failed to demonstrate prejudice because the record reveals that he understood the proceedings and was able to rationally and meaningfully consult with counsel. There is no reasonable probability, under these circumstances, that the Court would have granted a competency hearing had counsel requested one. Accordingly, Petitioner's contentions that he might have been incompetent to plead guilty, and that counsel was ineffective for failing to raise the issue, are denied.

### 2. Involuntary Plea

Petitioner appears to argue that his guilty plea was not knowingly and voluntarily entered because counsel failed to adequately investigate an insanity defense, promised that he would receive a 15-year sentence, and failed to preserve his right to appeal the sentence. He further argues that he "could not have understood the proceedings" because "both his initial appearance and entry of plea took place on the same date." (Doc. No. 1 at 4-6).

Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. To meet this requirement, Petitioner must

13

establish "both subjectively that he would have gone to trial and that it would have been *objectively reasonable* to do so." United States v. Santiago, 632 F. App'x 769, 773 (4th Cir. 2015) (emphasis in original) (citing United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012)).

First, Petitioner contends that counsel failed to investigate an insanity defense. At the Rule 11 hearing, Judge Cayer asked Petitioner whether he "had enough time to discuss with your attorney any possible defenses you may have to this charge" and Petitioner responded "[y]es." (Doc. No. 36 at 13). Judge Cayer then asked Petitioner whether he was satisfied with counsel's services and Petitioner again responded "[y]es." [Id.]. Petitioner's present self-serving contention that counsel failed to adequately investigate an insanity defense is contradicted by his own admissions under oath at the Rule 11 hearing and is rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221-22. Moreover, Petitioner has failed to come forward with any evidence that an insanity defense existed. See 18 U.S.C. § 17(a) (an insanity defense requires the defendant to prove by clear and convincing evidence "that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts."); United States v. Green, 468 F.2d 116, 118 (4th Cir. 1972) (insanity may be argued as a defense only if evidence supporting the assertion has been presented). Petitioner has thus failed to demonstrate that counsel performed deficiently with regards to an insanity defense.

Second, Petitioner contends that counsel misadvised him that he would receive a sentence of only 15 years' imprisonment if he pleaded guilty, and that he did not know he would end up receiving a 30-year sentence. (Doc. No. 1 at 5). This claim is conclusively refuted by the record. Petitioner stated under oath at the Rule 11 hearing that he understood: the minimum mandatory sentence was 15 years' imprisonment; the maximum sentence was 30 years' imprisonment; the

14

sentence had not yet been determined; the Court could sentence him up to the statutory maximum; he had not been promised a light sentence in exchange for his plea; and a sentence higher than he expected would not permit him to withdraw his guilty plea. (CR Doc. No. 36 at 4-7, 13). His present self-serving and unsupported claims that he was promised a 15-year sentence, and did not realize that he would end up receiving a 30-year sentence, are rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221-22.

Third, Petitioner contends that he did not know that "by pleading guilty he would be waiving his right to appeal." (Doc. No. 1 at 5). This claim is likewise conclusively refuted by the record. Judge Cayer asked Petitioner at the Rule 11 hearing whether "the right to appeal your conviction and sentence [has] been expressly waived…" and Petitioner responded "[y]es." (CR Doc. No. 36 at 11-12). His present self-serving and unsupported claim that he did not understand that the Plea Agreement included an appellate waiver, is rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221-22.

Finally, Petitioner contends that there was "no possible way" that he had adequate time to discuss the facts, elements, and defenses with counsel because his first appearance and Rule 11 hearing occurred on the same day. (Doc. No. 1 at 4-5). This claim is conclusively refuted by Petitioner's sworn statements at the Rule 11 hearing. He stated that he fully understood the charge set forth in the Information, *i.e.*, one count of production of child pornography, and that he was in fact guilty of that offense. (CR Doc. No. 36 at 6, 8). As previously discussed, he stated that he had enough time to discuss any possible defenses with his attorney and was satisfied with counsel's services. (Id. at 13). Moreover, Petitioner's claim of insufficient time to confer with counsel is belied by the record. Although Petitioner's first appearance and Rule 11 hearing in this Court occurred on July 20, 2020, the case against him "started in state court." See (CR Doc. No. 30 at

15

10) (defense counsel explaining at the sentencing hearing that "[t]his case started in state court…"). Petitioner was taken into custody on state charges on April 23, 2018. He had counsel and signed the Plea Agreement in the instant case on June 9, 2020, before the Information had been filed, indicating that Petitioner had counsel and negotiated the Plea Agreement before he was federally charged. See (CR Doc. No. 3 at 7) (Plea Agreement signed by Petitioner and counsel on June 9, 2020); (CR Doc. No. 4 at 2) (Factual Basis signed by counsel on June 9, 2020). Petitioner's July 20, 2020 first appearance and Rule 11 hearing occurred 40 days after he was charged and 41 days after he and counsel signed the Plea Agreement. He has failed to explain why that time was insufficient to fully understand the charges, facts, any possible defense, and to enter a knowing and voluntary guilty plea at the Rule 11 hearing.

Moreover, Petitioner has failed to demonstrate how any of the foregoing incidents of allegedly deficient performance prejudiced him. He does not assert that he would not have pleaded guilty but for any of counsel's allegedly deficient advice, and it would not have been objectively reasonable for him to do so. Absent the Plea Agreement, the Government would have charged him with additional offenses that would have raised his sentencing exposure from 30 years to life imprisonment, and the record reflects that there was strong evidence of his guilt. See (CR Doc. No. 4 at 1) (Factual Basis); (CR Doc. No. 20 at ¶¶ 9-20) (Statement of Relevant Conduct); (CR Doc. No. 30 at 16-17) (sentencing hearing transcript where the Government explained its decision to forego additional charges in light of the Plea Agreement). Petitioner's claims that the guilty plea was involuntary will, therefore, be denied.

### 3. Notice of Appeal

Petitioner appears to argue that counsel failed to inform him of his right to appeal, and that Petitioner unsuccessfully attempted to contact counsel after sentencing to tell counsel that he

16

Case 3:20-cr-00189-KDB-DCK    Document 37    Filed 04/14/22    Page 16 of 20

wished to appeal. (Doc. No. 1 at 5-7).

Strickland applies in the context of appellate representation. Counsel must file a notice of appeal when instructed by the client to do so. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Even if a client does not expressly request an appeal, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds to appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480; United States v. Cooper, 617 F.3d 307 (4th Cir. 2010). Dereliction of either of these duties constitutes deficient performance. See Flores-Ortega, 528 U.S. 477, 480; Cooper, 617 F.3d at 313. A defendant establishes prejudice by demonstrating a reasonable probability that he would have filed an appeal "but for" counsel's failure to file or consult. Flores-Ortega, 528 U.S. 484.

Petitioner's contention that he was unaware of his right to appeal is conclusively refuted by the record. The Court informed Petitioner at the end of the sentencing hearing that he had the right to appeal, that he had 14 days to file a notice of appeal, and that assistance with filing a notice of appeal was available at his request, and Petitioner stated that he understood. (CR Doc. No. 30 at 30-31). His present self-serving and unsupported contention to the contrary is rejected. See generally Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221-22.

Petitioner has not demonstrated that counsel either had a duty to consult with him about appealing, or that counsel failed to honor an express request to file an appeal on his behalf. Counsel had no duty to consult with Petitioner about appealing because there was no reason to think that a rational defendant would want to appeal in light of the favorable Plea Agreement that limited his sentencing exposure at 30 years' imprisonment rather than life, and which contained an express

17

appellate waiver. (Doc. No. 30 at 16-17). Nor has Petitioner asserted that he reasonably demonstrated to counsel that he was interested in appealing. He claims that he attempted to contact counsel after sentencing, but he does not assert that his conduct ever alerted counsel that he was interested in appealing. Finally, Petitioner does not assert that he ever instructed counsel to file an appeal on his behalf, and that counsel failed to do so. He argues that he unsuccessfully attempted to contact counsel, however, he does not assert that he ever actually informed counsel that he wanted to appeal and that counsel failed to honor that request. Accordingly, Petitioner has failed to demonstrate that counsel was ineffective with regards to appealing, and this claim is denied.

### 4. Requests for Relief

Finally, Petitioner asks the Court to appoint counsel, order the Government to respond, allow Petitioner to reply, require the Government to provide him with a complete file of the criminal proceedings, grant him the opportunity to engage in discovery, allow him to amend, and grant any other relief that the Court deems just and proper. (Doc. No. 1 at 7).

Petitioner requested that the Court allow him to amend, however he had the ability to amend pursuant to Rule 15 of the Federal Rules of Civil Procedure and failed to do so. He neither amended as a matter of right, nor presented a proposed amended § 2255 petition and a motion for leave to file and thus his request for leave to amend is moot. Petitioner's requests that the Court to order the Government to respond and allow him to file a reply, are also moot. See (Doc. Nos. 2, 4, 6). His request for any relief the Court deems just and proper is likewise moot, as his Motion to Vacate has been denied and no relief is warranted whatsoever.

Petitioner requests the appointment of counsel, however, there is no constitutional right to the appointment of counsel in a § 2255 proceeding. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). In § 2255 actions, appointment of counsel is governed by the Rules Governing § 2255

Proceedings, Rules 6(a) and 8(c), which mandate the appointment of counsel where discovery is necessary or if the matter proceeds to an evidentiary hearing. The Court may appoint counsel to a financially eligible habeas petitioner if justice so requires. See 18 U.S.C. § 3006A(a)(2)(B). Petitioner has failed to justify his request for counsel in any way, and the Court finds that Petitioner has represented himself ably in this matter. Accordingly, the appointment of counsel is not warranted.

Next, Petitioner requests that the Government provide him with a complete copy of the criminal proceedings. Under Rule 1.16(d) of the North Carolina Rules of Professional Conduct, Petitioner's trial counsel was responsible for providing him with the criminal case file, and not the Government. See United States v. Basham, 789 F.3d 358, 388 (4th Cir. 2015) (reviewing legal authority requiring counsel to deliver client's file upon termination of representation). Moreover, it appears that Petitioner was able to obtain the relevant records as, in his Motion for Continuance, Petitioner does not assert that he required additional time to reply due to a lack of records. See (Doc. No. 7). Nor did he file a motion to compel. Accordingly, his request that the Government provide him with the criminal case file is denied.

Finally, Petitioner asks the Court to "[e]xpand the record to allow petitioner to develop and discover facts and material relative to his claims of ineffective assistance of counsel." (Doc. No. 1 at 7). A 2255 petitioner must demonstrate good cause in order to obtain discovery. The Rules governing 2255 proceedings state that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law…." Rule 6(a), 28 U.S.C. foll. § 2255. A party requesting discovery in a § 2255 proceeding must provide reasons for the request, and must include any proposed interrogatories, requests for admission, and must specify any requested documents.

19

Further, if a motion to vacate is not dismissed, the court may also direct the parties to expand the record by submitting additional materials relating to the motion. Rule 7(a), 28 U.S.C. foll. § 2255. Petitioner's requests for discovery and to expand the record are vague and conclusory such that the Court cannot determine what information he is seeking to discover or present to the Court, nor has he demonstrated good cause to support a discovery request. Accordingly, his requests for discovery and to expand the record are denied.

## IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: April 14, 2022

Kenneth D. Bell
United States District Judge